# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| SWAGWAY, LLC, an Indiana limited liability company, | |
| Plaintiff, | Civil Action No. 3:16-cv-567 |
| v. | **JURY TRIAL REQUESTED** |
| HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD., a Chinese company, JANSCO MARKETING, INC., a Massachusetts corporation, and COKEM INTERNATIONAL, LTD., a Minnesota corporation, | |
| Defendants. | |

## COMPLAINT

Plaintiff Swagway, LLC ("Swagway"), as and for its Complaint against Defendants Hangzhou Chic Intelligent Technology Co., Ltd. ("Chic"), Jansco Marketing, Inc. ("Jansco"), and COKeM International, Ltd. ("COKeM"), alleges as follows:

## NATURE OF THE ACTION

1.     Swagway and Chic both sell self-balancing two-wheeled boards or "hoverboards" in the U.S. market. This is an action for unfair competition and intentional interference with business relationships arising from numerous false and misleading statements made by Chic and its agents, including Jansco and COKeM, to Swagway's retailers and customers regarding Swagway, its hoverboards, and Chic's alleged patent rights. Defendants made these statements for the sole purpose of causing harm to Swagway's business and preventing fair competition. Swagway seeks damages for and injunctive relief from Defendants' intentional and improper activities.

## THE PARTIES

2.      Swagway is a limited liability company organized and existing under the laws of Indiana, with its principal place of business at 3431 William Richardson Drive, Suite F, South Bend, Indiana 46628.

3.      On information and belief, Chic is a company organized and existing under the laws of the People's Republic of China, with a principal place of business at 2/F, No. 2 Building, Liangzhu University, Science and Technology Park, No. 1 Jingyi Road, Liangzhu, Hangzhou, 311112, People's Republic of China.

4.      On information and belief, Jansco is a corporation organized and existing under the laws of Massachusetts, with a principal place of business at 31 Schoosett Street, # 107, Pembroke, Massachusetts 02359.

5.      On information and belief, COKeM is a corporation organized and existing under the laws of Minnesota, with a principal place of business at 3880 4th Avenue East, Shakopee, Minnesota 55379.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1367 and 15 U.S.C. § 1121(a) because this is an action for violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy with respect to Swagway's claims against Defendants exceeds the value of $75,000, exclusive of interests and costs.

7.      This Court has personal jurisdiction over Chic because, on information and belief, Chic regularly and purposefully avails itself of the privilege of conducting business activities in this District and the State of Indiana. In particular, on information and belief, Chic markets, offers to sell, and/or sells Chic's products, directly and/or through distributors, to consumers

throughout the United States, with the reasonable expectation that its products will be purchased and/or used by consumers in this District. On information and belief, Chic has sold and shipped Chic products to consumers in the State of Indiana, including this District.

8.      This Court has personal jurisdiction over Jansco because, on information and belief, Jansco is an agent of Chic and acts in concert with Chic to market, offer to sell, and/or sell Chic's products, directly and/or through distributors, to consumers throughout the United States, with the reasonable expectation that Chic's products will be purchased and/or used by consumers in this District. On information and belief, Jansco routinely conducts sales and marketing activities in the State of Indiana including this District and claims on its website that Indiana is a geographical territory in which Jansco conducts sales and marketing activities.

9.      This Court has personal jurisdiction over COKeM because, on information and belief, COKeM is another agent of Chic and acts in concert with Chic to market, offer to sell, and/or sell Chic's products, directly and/or through distributors, to consumers throughout the United States, with the reasonable expectation that Chic's products will be purchased and/or used by consumers in this District. On information and belief, COKeM routinely ships products to locations throughout the United States, including the State of Indiana and this District, and claims on its website that it ships products to the State of Indiana within two days.

10.     Venue is proper in this District under 28 U.S.C. § 1391.

## BACKGROUND

### Swagway

11.     Swagway is in the business of the development, production, marketing, and sale of its Swagway X1, Swagtron T1, and Swagtron T3 hands-free smart boards also known as hoverboards ("Products").

12.     Swagway markets, offers to sell, and/or sells its Products to customers throughout the United States, both directly and through its nationwide network of distributors and retailers.

13.     Swagway's network of retailers, each of which Swagway maintains an ongoing valid business relationship, include: QVC, Inc., Modell's Sporting Goods, Best Buy Co. Inc., Target Corp., Nebraska Furniture Mart, Inc., Adorama Camera, Inc., Fry's Electronics, Inc., BJ's Wholesale Club, Inc., and EVINE Line, Inc.

<u>**Defendants**</u>

14.     Chic is a competitor of Swagway's in the U.S. hoverboard market.

15.     Chic's products are offered for sale to and may be purchased and/or used by consumers in this District.

16.     Chic owns, maintains, and/or operates a website at http://www.chic-robot.com/en/, the content of which is incorporated herein by reference. Under its "On-line shop" tab, Chic's website provides links to Chic's online stores hosted by e-commerce companies Alibaba (http://chic-robot.en.alibaba.com/) and eBay (http://www.ebay.com/usr/iochic/), through which customers in the U.S. and this District can purchase Chic's products.

17.     On information and belief, Chic fraudulently obtained several U.S. patents allegedly covering hoverboard technology due to inequitable conduct it committed before the United States Patent and Trademark Office ("USPTO"). Specifically, Chic withheld from the USPTO several material information that would render its patents invalid with the intent to deceive the USPTO, as explained in detail in Swagway's Answer, Affirmative Defenses, and Counterclaims filed in *Hangzhou Chic Intelligent Tech. Co. v. Swagway, LLC*, No. 3:16-cv-04804-HSG (N.D. Cal.) on August 26, 2016, the content of which is incorporated herein by reference.

18.     On information and belief, Jansco and COKeM are agents of Chic in the United States. Chic, acting in concert with Jansco and COKeM, markets and offers to sell its products to hoverboad retailers and customers, including Swagway's retailers and customers, by making false and misleading statements about Swagway, its products, and Chic's patent rights.

### Defendants' False and Misleading Statements

19.     On information and belief, since at least May 2016, Chic and its agents, including Jansco and COKeM, have been communicating directly with and making false and misleading statements to Swagway's retailers and/or customers regarding Swagway, its hoverboards, and Chic's patent rights.

20.     For example, on May 20, 2016, Chic sales agent John Garvey of Jansco, wrote to Marty Checkoway, a buyer for Swagway retailer BJ's Wholesale Club, Inc. ("BJ's"), regarding Segway, Inc.—a company that sells personal transporters. Mr. Garvey wrote that "the only company that works in partnership with Segway, and that will receive exemption from the ITC [U.S. International Trade Commission] ruling, is [Chic]. … The two companies are allied in the protection of their combined intellectual properties. Segway permits importation of non-infringing companies and licensees, and [Chic] will be able to provide documentation to US Customs to ensure Customs clearance for Chic hoverboards." *See* Email chain between J. Garvey and M. Checkoway (Ex. A) at 3.

21.     And on June 2, 2016, Mr. Garvey again wrote to Mr. Checkoway that Chic "work[s] with Segway to ensure that IP's are not infringed and have Segway's full support in the US market." *See id.* at 2.

22.     Mr. Garvey's May 20 and June 2 emails to BJ's Mr. Checkoway are materially false and misleading for at least the following reasons, on information and belief: Chic and Segway are not "in partnership" or "allied in the protection of their combined intellectual

properties." Chic is also not a licensee of Segway with respect to Chic's hoverboards; nor does it "have Segway's full support in the US market." For example, on August 16, 2016, Segway, Inc. filed a Complaint with the U.S. International Trade Commission alleging that Chic's hoverboards infringe two U.S. patents. *See Certain Personal Transporters, Components Thereof, & Packaging & Manuals Thereof*, Inv. No. ITC-337-3168.

23.     On information and belief, Jeff Manatrey, COKeM's Senior Sales Director, has made similar false and misleading statements to various distributors, retailers, and/or customers of hoverboards, including (i) that Chic holds the only license to sell hoverboards in the United States, and (ii) that Chic's product was the only patented product available for sale legally in the United States. For example, on information and belief, Mr. Manatrey made such statements at a trade show held on August 14-16, 2016, in Minneapolis, Minnesota, that was sponsored by Mid-States Distributing Company, Inc., a company that represents approximately 40 retailers and a combined 750 stores. On information and belief, Mr. Manatrey's false and misleading statements created confusion and concern among those distributors, retailers, and/or customers at the tradeshow and resulted in a loss of sales of Swagway Products.

24.     On information and belief, in June 2016, at Chic's request, Chinese Customs in Shenzhen inspected a shipment of Swagway Products bound for the United States for possible infringement of Chic's patents. On information and belief, upon inspecting the Swagway Products, Chinese Customs found no grounds to detain the products. In fact, the Chinese Customs' records for this inspection contain handwritten notes dated June 28, 2016, stating in Chinese, among other things, "nothing unusual" and "no infringement" with respect to the inspected products. Consequently, Chinese Customs released the products for shipment, which have since arrived in the United States.

25.     On July 1, 2016, Chic published a press release on its website regarding this June Customs inspection, titled "Chic Intercepted Four Export Containers of Infringing Smart Boards in Shenzhen Customs." *See* http://www.chic-robot.com/en/index.php/news/info/38. A true and correct copy of this press release is attached as Ex. B.

26.     Chic's July 1 press release reads:

> In June 2016, four export containers of ***infringing*** smart boards with SWAGTRON logo founded [sic] on scooters and packages ***were intercepted by [Chic] in Shenzhen Customs***.

*See id*. (emphasis added).

27.     Also on or about July 1, 2016, Chic and/or its agents, including Jansco and/or COKeM, communicated directly to Swagway's retailers and/or customers regarding this June Customs inspection. For example, on July 1, 2016, Chic's agent Mr. Garvey of Jansco wrote the following to Mr. Checkoway of BJ's.

> ***Chinese customs has started holding containers of Swagtron products from even leaving China due to infringement of Chic's patents***. The first four containers of Swagtron T1's ***have just been seized*** in Shenzhen Customs.
>
> Between Chic's patents, which I sent on Wednesday, and ***Chinese government support to prevent infringing goods from even leaving the country, Chic will be the only reliable, legal and safe source of goods in the US this year***.

*See* Ex. A at 1. (emphasis added).

28.     Chic's July 1 press release and Mr. Garvey's July 1 email are materially false and misleading for at least the following reasons, on information and belief:

(i)     Stating that the Swagway Products were "infringing" and failing to

indicate that Chinese Customs found "nothing unusual" and "no

infringement" of Chic's patents with respect to the products.

(ii)     Stating that the Swagway Products were "intercepted," "seized," and "prevent[ed] … from even leaving the country," and failing to indicate that, upon finding "nothing unusual" and "no infringement," Chinese Customs cleared and released the products for shipment to the United States.

(iii)    Stating that Chic will be "the only reliable, legal and safe source of goods in the US this year," despite the fact that Chinese Customs cleared and released the Swagway Products, which have since arrived in the United States, and that Swagway's Products, which use the UL 2271 Certified SentryShield™ Battery, are reliable and safe.

(iv)    Stating that four containers of Swagway Products were inspected, instead of only two containers.

29.     On or about August 2, 2016, Chic and/or its agents began sending cease-and-desist ("C&D") letters to retailers of the Swagway Products with whom Swagway maintains ongoing business relationships. Specifically, Chic and/or its agents sent a C&D letter dated August 2, 2016, to at least the following Swagway retailers: QVC, Inc., Modell's Sporting Goods, Best Buy Co. Inc., Target Corp., Nebraska Furniture Mart, Inc., Adorama Camera, Inc., and Fry's Electronics, Inc. And on or about August 16, 2016, Chic and/or its agents sent a C&D letter to at least the following additional Swagway retailers: BJ's Wholesale Club, Inc. and EVINE Line, Inc.

30.     An exemplary C&D letter, which was sent to Swagway retailer QVC, Inc. and dated August 2, 2016, is attached as Ex. C.

8

31.     In its letter, Chic identifies itself as the owner of U.S. Patent No. 9,376,155 and U.S. design patents D737,723 and D738,256 (collectively, "Chic's Patents"). It then alleges that "[b]ased on our investigation, certain personal vehicles, such as the 'Swagtron' [and] 'Swagway' … lines of produces made and sold by [Swagway], practice Chic's Patents."

32.     Chic's letter also alleges that "Chic has not granted Swagway a license to practice Chic's Patents. … Your sale of the Swagway products (Exhibit 4) is considered an unauthorized sale and therefore infringement of Chic's Patents, for which courts may order compensation to be paid to Chic."

33.     Chic then demands that the retailer immediately take the following actions:

(A) cease the sale of the infringing products,

(B) provide us with written assurance within five (5) calendar days that you have done so,

(C) provide reports of sales of the infringing products to date, and

(D) request and confirm that your retailers have delisted or removed the infringing products.

34.     And in closing, Chic states:

> Failure to receive a timely response from you may force Chic to seek all available remedies under the laws of the United States, including monetary damages and injunctive relief. In addition, now that you are on notice that sale of the infringing products is unauthorized, your continued sales may constitute "willful infringement" and subject you to enhanced damages under 35 U.S.C. § 284.

35.     On information and belief, Chic, its agents, and its counsel knew or should have known that Chic's patents listed in its C&D letters are invalid, unenforceable, and not infringed by the Swagway Products. Yet, Chic, its agents, and/or its counsel sent these C&D letters in bad faith to disparage Swagway's reputation and tortiously interfere with Swagway's business relationship with its retailers and/or customers.

36.     Chic's C&D letters dated August 2 and 16 are also materially false and misleading for at least the following reasons, on information and belief:

(i)     Stating that all three of Chic's patents listed in the letters are infringed by each of the three Swagway Products. On information and belief, Chic was aware that this is a false and misleading statement. For example, on August 19, 2016, Chic filed a Complaint against Swagway in U.S. District Court. *See Chic v. Swagway*, Case No. 16-cv-04804 (N.D. Cal.). In it, Chic alleges only that (1) U.S. Patent No. 9,376,155 is infringed by the Swagtron T1 and Swagtron T3 models (not the Swagway X1 model), and (2) design patent U.S. D737,723 is infringed by the Swagway X1 and Swagtron T1 models (not the Swagtron T3 model). Thus, despite alleging in its C&D letters that Swagway's products infringe design patent U.S. D738,256, Chic's exclusion of this patent from its lawsuit indicates that Chic does not believe it has a good-faith basis for making such infringement allegations.

(ii)    Stating that the "'Swagway' … line[] of products" infringes each of the three listed Chic patents. The only model in the "Swagway" line of products is the "Swagway X1" model. No Swagway retailers market, sell, or offer to sell the "Swagway X1" model; it is available directly from Swagway. As such, retailers receiving a C&D letter may likely believe that Chic's reference to the "'Swagway' … line[] of products" refers to all models made by Swagway, instead of just the "Swagway X1." This

10

statement is therefore likely to mislead the retailers that receive the letter

and to disparage Swagway's reputation.

37.     On or about August 3, 2016, Chic and/or its agents, including Jansco and/or

COKeM, communicated directly to Swagway's retailers who had not yet been sent C&D letters.

For example, Chic's agent Mr. Garvey of Jansco wrote the following to Mr. Checkoway of BJ's:

> I wanted to follow up one more time about the Chic High
> Roller hoverboards, and the Swagtron boards specifically. Chic is
> now aggressively defending their utility and design patents here in
> the US. ***Last I knew you were still planning to work with
> Swagtron in Q4, so I wanted to give you a heads up that today
> Chic started sending cease & desist letters to Swagtron retailers.
> A sample letter is attached. I really wanted to make sure you had
> all the information before you finalize any plans, and while there
> is still time to secure your season with Interworks, Chic'[s] US
> distributor***.

Ex. A at 1 (emphasis added).

38.     As indicated above, Mr. Garvey attached to his email a template of Chic's C&D

letter being sent to Swagway's retailers, which is printed on Chic's counsel's letterhead. *See* Ex.

D at 3-4.

39.     On information and belief, Chic's C&D letters appear to have been sent in bad

faith in order to mislead and harass Swagway's retailers, for reasons in addition to containing

multiple false and misleading statements. For example, Chic's C&D letters appear to have been

generated in haste and likely based on the same template or form letter. This is because, among

other reasons, all of Chic's letters dated August 2 and 16 that are in Swagway's possession have

identical language in their letter bodies (and thus identical false and misleading statements).

Also, the letters are signed with a typed "/s/" and signature, instead of signed manually by Chic's

counsel, a customary formality with correspondence containing such serious allegations and

demands that are intentionally designed to disrupt another's business. Chic's generation of its

letters based on a form is supported by the template C&D letter sent by Chic's agent Mr. Garvey of Jansco to BJ's agent Mr. Checkoway. Chic's use of a template to generate identical batch-mailings suggests a lack of due diligence with respect to evaluating any specific allegedly infringing acts conducted by each retailer receiving a letter.

40.     The fact that Chic and/or its agents, not Chic's counsel, sent out the template C&D letter without even identifying any particular company or allegedly infringing products sold by that company further shows that Chic's C&D letters were sent to Swagway's retailers in bad faith.

41.     On August 10, 2016, Swagway's in-house counsel, Lydia M. Lim, sent a letter to Chic's counsel, Qingyu Yin, demanding that Chic stop its tortious and unfairly competitive activities. And on August 17, 2016, Ms. Lim sent a letter to Chic's agent Mr. Garvey of Jansco, demanding that Jansco stop its tortious and unfairly competitive activities:

> It has come to the attention of [Swagway], that Jansco Marketing Inc. ("Jansco") has undertaken certain activities and participated in communications with Swagway's customers that are designed to encourage our customers and prospective customers to cancel and/or not place orders for Swagway products.
>
> Specifically, we are aware that you have distributed a form letter from Qingyu Yin of Finnegan to our customers which asserts an unsubstantiated allegation of patent infringement by Swagway as to patents that [Chic] claims to own. You also circulated an email stating the false claim that Chic has maintained a seizure of Swagway products in China. While Chic did initiate an illegitimate customs seizure of Swagway's products in China, it was unable to sustain this action and our products were released several weeks, if not months ago. The publication of this matter by Jansco constitutes misinformation intended to create doubts and concerns by our customers regarding the legality and availability of Swagway products.
>
> We demand that Jansco immediately cease and desist from circulating the Finnegan letter, any misinformation regarding any customs seizure, and any further information, whether orally or in written form, to any third party that constitutes any violation of

> unfair competition law, tortious interference, defamation, and other
> unlawful practices.
>
> Please be advised that Swagway reserves all rights, to the full
> extent of the law, to pursue all legal remedies available to it against
> Jansco for any and all damages, losses, claims, fees and expenses
> incurred whatsoever arising out of any Jansco's blatant and
> improper interference with our customers and our business,
> including without limitation monetary damages and damages to
> our reputation and goodwill.

*See* Ex. D, at 1.

42.     Despite Ms. Lim's August 10, 2016 letter, on August 20, 2016, Chic published

another press release on its website regarding Swagway, titled "Hangzhou CHIC Sues Swagway

in the United States for Patent Infringement over Smart Scooter Technologies." *See*

http://www.chic-robot.com/en/index.php/news/info/38. A true and correct copy of this press

release is attached as Ex. E. Chic's August 20 press release was subsequently re-published on

August 22 by PR Newswire. *See* http://www.prnewswire.com/news-releases/hoverboard-

originator-hangzhou-chic-sues-swagway-in-the-united-states-for-patent-infringement-over-

smart-scooter-technologies-300316456.html.

43.     Chic's August 20 press release reads, in pertinent part:

> [Chic] is determined to protect its rights in the technologies for the
> Smart scooter. ***Starting early August 2016, Chic issued Cease &
> Desist ("C&D") letters to more than a dozen retailers for
> [Swagway], demanding immediate desistance of patent
> infringement activities. Some of the retailers complied. Yet others
> continue to sell the infringing products.***
>
> To stop the infringing activities and prevent further infringement
> upon Chic's property rights, on August 19, 2016 (U.S. time), Chic
> filed a complaint for patent infringement against Swagway in the
> United States Court for the Northern District of California. …
>
> This is the second lawsuit Chic has initiated against Swagway
> products. The first one was filed in China this July after Swagway
> repeatedly tried to have infringing products exported to the U.S. ***In
> June 2016, Chic intercepted four containers of such products***

> *through the Customs. (http://www.chic-robot.com/en/index.php/news/info/36: Chic Intercepted Four Export Containers of Infringing Smart Boards in Shenzhen Customs.)* The intercepted products bore the trademark "SWAGTRON" on both the scooters and the packages. SWAGTRON is a brand of SWAGWAY, as shown on pages 11 and 12 of the complaint filed in the Northern District of California on August 19, 2016.
>
> *In July 2016, Chic again learned that Shenzhen Zhouwu Technology Co., Ltd. ("Zhouwu") attempted to export two batches (2520 units) of infringing [Swagway Products] through Shenzhen Customs. Customs was able to timely intercept and stop the products from exiting the country after communicating with Chic.* Chic then immediately filed a complaint for patent infringement against Zhouwu with the Shenzhen Intermediate People's Court. The Court accepted the case on July 12th and the case is proceeding according to court schedule.

Ex. E (emphasis added).

44.     Chic's August 20 press release is materially false and misleading for at least the following reasons, on information and belief:

(i)     Stating that the Swagway Products were the subject of a fictitious second inspection by Chinese Customs, which allegedly occurred sometime in July 2016, at which "Customs was able to timely intercept and stop the products from exiting the country after communicating with Chic." No such inspection ever occurred.

(ii)    By repeating the same materially false and misleading statements Chic made in its July 1 press release regarding the June inspection, and subsequent clearance and release, of a shipment of Swagway Products by Chinese Customs in Shenzhen. These false and misleading statements are described in paragraph 28, which Swagway re-alleges and incorporates by reference as if fully stated herein.

14

## Results of Defendants' Wrongful Conduct

45.     Defendants' false and misleading statements contained in, e.g., direct email or other communications to Swagway's retailers and/or customers, publicly available press releases on Chic's website, and mass mailings of C&D letters to Swagway's retailers, have disparaged and diminished Swagway's business and caused material deception in the U.S. marketplace for hoverboards, specifically with respect to Swagway's Products.

46.     Swagway has received and had to respond to inquiries from numerous retailers and others regarding Defendants' false and misleading statements made since May 2016, e.g., regarding the existence and veracity of Defendants' statements.

47.     Defendants' false and misleading statements have adversely affected Swagway's ability to compete and have detracted from its reputation and goodwill in a manner that benefitted Defendants. For example, on information and belief, Swagway's retailers and customers were aware of Defendants' statements when they were made and were influenced by them to purchase hoverboards from Chic rather than from Swagway. Defendants' statements had direct effects on Swagway and the U.S. market for hoverboards in which Swagway participates.

48.     Defendants' deceptions were material and likely to influence purchasing decisions. For example, on information and belief, retailers and other customers made decisions that were or may have been influenced by Defendants' misrepresentations, among others, that (i) Swagway's Products are infringing each of Chic's three patents; (ii) Chinese Customs is working in concert with Chic to prevent Swagway's Products from being exported to the United States and has seized six containers of Swagway's Products; (iii) Chic will be the only source of hoverboards in the U.S. in 2016; and (iv) Chic and Segway are allied in a partnership whereby Chic will receive a license from Segway with respect to Chic's hoverboards. Defendants made these false and misleading statements, among others, to a substantial segment of the U.S. market

for hoverboards for the sole purpose of causing harm to Swagway's business and preventing fair competition.

49.     U.S. customers of hoverboards would read and/or hear Defendants' false and misleading statements and would likely be deceived as to the nature of Swagway's Products and buy hoverboards from Chic. On information and belief, Swagway's retailers and customers were likely aware of Defendants' statements and influenced by them to buy Chic's hoverboards instead of Swagway's.

50.     As a direct and proximate result of Defendants' false and misleading statements, Swagway has suffered and, unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual economic damages in the form of lost sales, revenues, and profits, and immediate and irreparable harm to its goodwill and reputation, for which Swagway has no adequate remedy at law. With respect to actual economic damages, for example, as a result of Defendants' false and misleading statements, one distributor delayed payment of approximately $1,300,000.00 owed to Swagway for several weeks and several retailers have ceased purchasing, advertising, and/or selling Swagway's Products. For example, QVC, Inc. suspended airing approximately six televised segments with regards to the sale of Swagway's Products and, to date, has continued to suspend its sales of the Swagway Products. In fact, Chic has admitted to the harm caused to Swagway by its false and misleading statements: in its August 20, 2016 press release, Chic wrote that it sent C&D letters to "more than a dozen retailers for [Swagway], demanding immediate desistance of patent infringement activities. ***Some of the retailers complied***." *See* Ex. E (emphasis added).

51.     Based on Defendants' wrongful conduct described above, considered as a whole, it is clear that Defendants have engaged in systematic intentional tortious interference with

Swagway's business relationships and unfair competition. Swagway believes that, after a reasonable opportunity for further investigation and discovery, it will likely have additional evidence supporting these allegations.

## COUNT I

### (Unfair Competition under the Lanham Act)

52.     Swagway re-alleges and incorporates by reference paragraphs 1 through 51 as if fully stated herein.

53.     Swagway's and Chic's products are used, sold, and/or offered for sale in interstate and foreign commerce.

54.     In connection with goods or services, Defendants have used one or more words, terms, names, symbols, or devices, alone or in combination, and have made false or misleading descriptions or representations of fact, which Defendants' caused to enter interstate commerce, in commercial advertising or promotion that  misrepresent the nature, characteristics, or qualities of Swagway's and/or Chic's goods, services, or commercial activities.

55.     Defendants knowingly and willfully misrepresented to the public, *inter alia*, the commercial statements alleged above.

56.     Defendants' commercial statements are either literally false or literally true but ambiguous and tend to cause confusion, mistake, and/or deception among those in the U.S. hoverboard market, including distributors, retailers, and customers of Swagway and Chic, as to the nature, characteristics, and quality of Swagway's and/or Chic's goods.

57.     Defendants' misrepresentations were material and made in bad faith for the purpose of deceiving a substantial segment of those in the U.S. hoverboard market, including distributors, retailers, and customers of Swagway and Chic, and harming Chic's competition, including Swagway.

58.     Defendants' misrepresentations materially deceived or were likely to materially deceive a substantial segment of those in the U.S. hoverboard market, including distributors, retailers, and customers of Swagway's and Chic's products. Further, Defendants' misrepresentations are likely to influence the purchasing decisions of others and have caused and will continue to cause injury to Swagway.

59.     By reason of Defendants' misconduct, Defendants have willfully violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as a direct and proximate result Swagway has suffered, and will continue to suffer, damage to its business, reputation, and goodwill and has lost sales and profits that it would have made but for Defendants' acts, in an amount to be determined at trial and no less than thirty million dollars ($30,000,000.00).

60.     Swagway has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' willful misconduct is allowed to continue.

## COUNT II

### (Unfair Competition under Indiana State Law)

61.     Swagway re-alleges and incorporates by reference paragraphs 1 through 60 as if fully stated herein.

62.     Defendants have unfairly competed with Swagway by making false or misleading descriptions or representations of fact in commercial advertising or promotion that misrepresent the nature, characteristics, or qualities of Swagway's and/or Chic's goods, services, or commercial activities.

63.     Defendants knowingly and willfully misrepresented to the public, *inter alia*, the commercial statements alleged above.

64.     Defendants' commercial statements are either literally false or literally true but ambiguous and tend to cause confusion, mistake, and/or deception among those in the

hoverboard market, including distributors, retailers, and customers of Swagway and Chic, as to the nature, characteristics, and quality of Swagway's and/or Chic's goods.

65.    Defendants' misrepresentations were material and made in bad faith for the purpose of deceiving a substantial segment of those in the hoverboard market, including distributors, retailers, and customers of Swagway and Chic, and harming Chic's competition, including Swagway.

66.    Defendants' misrepresentations materially deceived or were likely to materially deceive a substantial segment of those in the hoverboard market, including distributors, retailers, and customers of Swagway's and Chic's products. Further, Defendants' misrepresentations are likely to influence the purchasing decisions of others and have caused and will continue to cause injury to Swagway.

67.    By reason of Defendants' misconduct, Defendants have willfully violated the common law of the State of Indiana, and as a direct and proximate result Swagway has suffered, and will continue to suffer, damage to its business, reputation, and goodwill and has lost sales and profits that it would have made but for Defendants' acts, in an amount to be determined at trial and no less than thirty million dollars ($30,000,000.00).

68.    Swagway has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' willful misconduct is allowed to continue.

<u>**COUNT III**</u>

**(Tortious Interference with Business Relationships)**

69.    Swagway re-alleges and incorporates by reference paragraphs 1 through 68 as if fully stated herein.

70.    Swagway has valid and existing business relationships with its retailers and customers throughout the United States.

71.     On information and belief, Defendants knew of these business relationships between Swagway and its retailers and customers at the time Defendants made their false and misleading statements, *inter alia*, the statements alleged above.

72.     On information and belief, Defendants' intentional conduct of, among other things, making the false and misleading statements alleged above, interferes with Swagway's business relationships with its retailers and customers and was intentionally done for the purpose of causing harm to these relationships and preventing fair competition.

73.     Such interference was egregious, without justification, made in bad faith, and resulted in harm to Swagway.

74.     By reason of Defendants' misconduct, Defendants have tortiously interfered with Swagway's valid business relationships in violation of the common law of the State of Indiana, and as a direct and proximate result Swagway has suffered, and will continue to suffer, damage to its business, reputation, and goodwill and has lost sales and profits that it would have made but for Defendants' acts, in an amount to be determined at trial and no less than thirty million dollars ($30,000,000.00).

75.     Swagway has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' willful misconduct is allowed to continue.

## COUNT IV

### (Defamation)

76.     Swagway re-alleges and incorporates by reference paragraphs 1 through 75 as if fully stated herein.

77.     Defendants have made false and misleading statements about the nature, characteristics, and quality of Swagway's goods, as alleged above.

78.     Defendants knowingly and willfully made the false and misleading statements alleged above in bad faith with the intent to disparage Swagway's reputation and goodwill in the market.

79.     Defendants published their false and misleading statements via emails, letters, and online postings, as alleged above.

80.     Defendants' false and misleading statements have materially deceived or are likely to materially deceive those in the hoverboard market, including distributors, retailers, and customers of Swagway's and Chic's products. Further, Defendants' false and misleading statements influenced and continue to influence the purchasing decisions of others and have caused and will continue to cause injury to Swagway.

81.     By reason of Defendants' false and misleading statements, Defendants have willfully violated the law of the State of Indiana, and as a direct and proximate result Swagway has suffered, and will continue to suffer, damage to its business, reputation, and goodwill and has lost sales and profits that it would have made but for Defendants' acts, in an amount to be determined at trial and no less than thirty million dollars ($30,000,000.00).

82.     Swagway has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' willful misconduct is allowed to continue.

**<u>REQUEST FOR RELIEF</u>**

WHEREFORE, Swagway respectfully requests that this Court enter judgment against Defendants as follows:

1.     For judgment that:

   a.   Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a);

      b.  Defendants have unfairly competed with Swagway in violation of Indiana common law;

      c.  Defendants have tortiously interfered with Swagway's business relationships;

      d.  Defendants are liable for defamation; and

      e.  In all instances, Defendants have acted in bad faith, willfully, intentionally, and/or in malicious disregard of Swagway's lawfully protected rights.

2.      For an order preliminary and permanently enjoining Defendants, their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and employees, and all persons in active concert or participation with them, and mandating that Defendants cease and desist and refrain from:

      a.  Directly or indirectly making any false or misleading statements to anyone or committing any acts calculated to cause confusion or deceive anyone regarding Swagway, the nature of its products, or Chic's patents rights in the context of Swagway's Products, or otherwise unfairly competing with Swagway in any manner; and

      b.  Tortiously interfering with Swagway's business relationships; and

      c.  Publishing any false or misleading statements regarding Swagway and/or the nature of its products.

3.      For an order:

    a.  Requiring Defendants to account for and pay to Swagway all profits derived from Defendants' wrongful misconduct to the full extent provided for by the Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

    b.  Requiring Defendants to pay to Swagway all damages sustained by Swagway resulting from Defendants' wrongful misconduct, including treble damages, to the full extent provided for by the Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

    c.  Awarding Swagway damages, including punitive damages, to the full extent provided by Indiana state law;

    d.  Awarding Swagway its costs and expenses incurred in this action, including reasonable attorneys' fees; and

    e.  Awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Swagway respectfully requests a trial by jury of any and all issues on which a trial by jury is available under applicable law.

Dated:  August 26, 2016                    BOTKIN & HALL, LLP


                                           */s/ Michael D. Marston*
                                           Michael D. Marston (No. 26875-71)
                                           Garrick T. Lankford (No. 28648-20)
                                           105 East Jefferson Boulevard, Suite 400
                                           South Bend, IN 46601
                                           (574) 234-3900
                                           mmarston@bhlawyers.net
                                           glankford@bhlawyers.net

                                           *Of Counsel:*

                                           Lei Mei (*pro hac vice* pending)
                                           Richard P. Hadorn (*pro hac vice* pending)
                                           Jeff Pearson (*pro hac vice* pending)
                                           Irene Chen (*pro hac vice* pending)
                                           MEI & MARK LLP
                                           818 18th Street, N.W., Suite 410
                                           Washington, DC 20006
                                           (888) 860-5678
                                           mei@meimark.com
                                           rhadorn@meimark.com
                                           jpearson@meimark.com
                                           ichen@meimark.com

                                           *Counsel for Plaintiff Swagway, LLC*